UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK DANIEL CABAGUA,

        Petitioner,

    v.                            Case No. 19-cv-881-pp

SARAH COOPER,[1]

        Respondent.

**ORDER DENYING AS MOOT PETITIONER'S MOTION TO SUPPLEMENT THE RECORD (DKT. NO. 13), DENYING AS MOOT PETITIONER'S SECOND MOTION FOR APPOINTMENT OF COUNSEL (DKT. NO. 24), GRANTING RESPONDENT'S MOTION TO DISMISS PETITION (DKT. NO. 16), DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY AND DISMISSING CASE WITH PREJUDICE**

On June 14, 2019, the petitioner, an inmate at Oshkosh Correctional Institution who is representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging his 2009 convictions in Milwaukee County Circuit Court for one count of first-degree sexual assault of a child, one count of repeated first-degree sexual assault of a child, and one count of second-degree sexual assault of a child. Dkt. No. 1 at 1-2; see also State v. Cabagua, Milwaukee County Case No. 08CF005374 (available at

---

[1] The petitioner is incarcerated at Oshkosh Correctional Institution. See https://appsdoc.wi.gov /lop/home.do (last visited March 22, 2021). The last warden of that institution was Sarah Cooper. See https://doc.wi.gov/Pages/OffenderInformation/AdultInstitutions/OshkoshCorrectionalInstitution.aspx (visited December 17, 2020). As of March 22, 2021, however, the DOC web page shows that the warden position at Oshkosh is vacant. The court leaves Cooper as the respondent placeholder.

1

https://wcca.wicourts.gov). On January 28, 2020, the court screened the petition under Rule 4 of the Rules Governing Section 2254 Cases, allowed the petitioner to proceed on each of his grounds, denied the petitioner's motion for an evidentiary hearing, denied the petitioner's motion to appoint counsel and set a briefing schedule. Dkt. No. 10.

On March 10, 2020, the petitioner filed a motion to supplement the record with additional evidence. Dkt. No. 13. On April 21, 2020, the respondent filed a motion to dismiss the petition, dkt. no. 16, and a brief in support of the motion to dismiss, dkt. no. 17. The petitioner filed a brief opposing the motion to dismiss on July 17, 2020. Dkt. No. 22. The respondent filed a reply brief three weeks later. Dkt. No. 23.

This order grants the respondent's motion to dismiss the petition, dismisses the case, denies as moot the petitioner's second motion for appointment of counsel and denies as moot the petitioner's motion to supplement the record.

I.    **Background**

A.    State Case

1.    *Pre-trial proceedings and guilty plea*

In 2008, the State of Wisconsin charged the petitioner with three counts of first-degree sexual assault of a child, one count of repeated sexual assault of a child, one count of second-degree sexual assault of a child and one count of attempted second-degree sexual assault of a child. Dkt. No. 17-4 at 2. The

2

charges alleged that the petitioner committed the offenses against his daughter when she was between the ages of eight and thirteen. Id.

On the morning that his trial was to start in Milwaukee County Circuit Court, Judge Carl Ashley allowed the petitioner to speak with his mother, then to enter Alford pleas[2] to one count of repeated sexual assault of a child, one count of first-degree sexual assault of a child, and one count of second-degree sexual assault of a child. Id.; Dkt. No. 17-1 at 19. At the sentencing hearing, the State contended that the criminal complaint accurately reflected the events underlying the charges. Dkt. No. 17-5 at 2. The petitioner's trial attorney, Richard Voss, "did not contradict the State except to note that the allegations in the complaint did not reference violence as the State had suggested." Id.; see also State v. Cabagua, Milwaukee County Case No. 08CF005374 (available at https://wcca.wicourts.gov) On June 1, 2009, the court sentenced the petitioner to fifty years of imprisonment, consisting of twenty-five years of initial confinement followed by twenty-five years of extended supervision. Dkt. No. 17-4 at 2-3; State v. Cabagua, Milwaukee County Case No. 08CF005374 (available at https://wcca.wicourts.gov).

On February 10, 2010, the petitioner, by postconviction counsel, filed a motion under Wis. Stat. §809.30 requesting resentencing for ineffective assistance of counsel. Id.; Dkt. No. 2-1 at 40. The circuit court denied the

---

[2] "An Alford plea is 'a guilty plea in which the defendant pleads guilty while either maintaining his innocence or not admitting having committed the crime.'" State v. Nash, 951 N.W.2d 404, 407 (2020) (quoting State v. Garcia, 192 Wis. 2d 845, 856 (1995)).

3

motion two days later. <u>State v. Cabagua</u>, Milwaukee County Case No. 08CF005374 (available at https://wcca.wicourts.gov).

        2.    *2015 postconviction motion*

Over five years later, in July 2015, the petitioner attempted to withdraw his <u>Alford</u> pleas through a *pro se* motion for postconviction relief under Wis. Stat. §974.06. <u>Id.</u>; Dkt. Nos. 17-1 at 10, 17-4 at 3. As grounds, the petitioner asserted ineffective assistance of trial and postconviction counsel. Dkt. No. 2-1 at 40. When the circuit court denied the motion, the petitioner appealed. Dkt. No. 17-4 at 3. The Wisconsin Court of Appeals remanded the case to the circuit court to determine "whether information submitted by [the petitioner], which he indicated had not been presented to the circuit court, affected its decision to deny his §974.06 motion." <u>Id.</u> (citing Wis. Stat. §808.075(5). On October 13, 2016, after remand, the petitioner filed a supplemental §974.06 motion, asserting that after he had filed his previous §974.06 motion, he obtained "new evidence in the form of a medical report, a DNA report, and a police report." <u>Id.</u>; Dkt. No. 17-1 at 7. The petitioner argued that "this new evidence would have impacted the postconviction court's decision on the motion as originally filed." Dkt. No. 17-4 at 3. Finding that the reports "would not have had any effect whatsoever on [the] proper analysis and decision," the circuit court denied the supplemental motion. <u>Id.</u>

On January 17, 2018, the Wisconsin Court of Appeals affirmed the circuit court's order denying postconviction relief. <u>Id.</u> at 1, 18. The Court of Appeals noted the petitioner's arguments that his pleas were "infirm" because

4

he did not understand the nature of the charges, contending that "he was not aware of the elements of sexual contact and that the circuit court 'ignored that sexual gratification is an element to the crimes.'" Id. at 4. Disagreeing, the court concluded that the petitioner "was informed of all the essential elements of the crimes to which he entered pleas." Id. at 7. The court reasoned that (1) the petitioner signed an adequate plea questionnaire, id. at 5; (2) the petitioner "indicated in the addendum to the plea questionnaire and during the plea hearing that he had reviewed the complaint, which provided that the three counts to which he was pleading involved allegations of sexual intercourse," id.; (3) the petitioner confirmed to the circuit court that he understood that "each charge allegedly involved sexual intercourse," id. at 5-6; (4) because the charges all involved sexual intercourse, "[s]exual contact was irrelevant" and "it was unnecessary to explain sexual gratification because sexual contact was not charged," id. at 6; and (5) to the extent that the petitioner argued he was uninformed of the elements of sexual intercourse, that argument was undeveloped, id. at 6.

The court considered the petitioner's argument that "the State failed to disclose exculpatory evidence" when it "failed to provide him with several documents prior to the plea hearing and that had he been aware of these documents, he would not have entered his pleas." Id. at 7 (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)). Finding that the petitioner "[fell] short of showing a ***Brady*** violation," the Court of Appeals rejected the argument. Id. at 8. The court reasoned that the petitioner did not demonstrate a suppression of

5

the evidence, and that the record indicated that the State provided the medical and DNA reports in accordance with the petitioner's discovery demand. Id. The court observed that "[t]he prosecutor was able to locate the police report in the State's file and provided copies to [the petitioner] pursuant to his postconviction request." Id. It concluded that "[t]he State submit[ted] that if the prosecutor was willing to provide the reports pursuant to [the petitioner's] informal request, there is no reason to believe that he did not provide these reports pursuant to the formal request of [the petitioner's] trial counsel." Id. From the perspective of Court of Appeals, "[a]ll the petitioner ha[d] shown [was] that his trial counsel and the State Public Defender's office were unable to locate the documents several years after they closed their files. Neither said that they never had copies of the documents." Id. at 8-9.

The court concluded that even if the state had suppressed the documents, the petitioner had not established that any of the documents were material to his claims. Id. at 9 (citing State v. Harris, 272 Wis. 2d 80, 96 (2004)). In discussing the medical report, the court noted that the report

> provide[d] that the victim had a normal genital exam. The report specifically showed that the victim's hymen was intact; however, there was a written notation that most children who are victims of sexual abuse have normal medical exams. The nurse practitioner who conducted the examination made it a point to tell the police that the fact that a young girl's hymen is still intact does not mean she did not experience sexual activity. The medical report does not rule out the possibility that the victim had sexual intercourse, and, therefore, does not create a reasonable probability that the result of the proceeding would have been different.

Id. at 10. The Court of Appeals found that a DNA report

indicating that no semen was found on a black fitted sheet is not material exculpatory evidence. The victim told police there might be semen on the sheet from [the petitioner's] bed because that is where he repeatedly had sexual intercourse with her. The victim also said that [the petitioner] used a condom half of the times he had intercourse with her, always wiped himself off with a towel or shirt, and washed those items right away. She further reported that the last assault took place more than a week before the sheet was seized. Consequently, a report indicating the absence of semen on a sheet that was tested long after the acts, and in light of the other circumstances, does not create a reasonable probability that the result of the proceeding would have been different.

Id. at 9-10. The court found that the police report

reflect[ed] a series of interviews where the victim consistently stated that [the petitioner] repeatedly sexually assaulted her. Other witnesses who were interviewed substantiated details provided by the victim and offered information about prior instances of concerning behavior involving [the petitioner]. Any minor discrepancies, to the extent they qualify as such, contained within the lengthy report of interviews do not amount to material exculpatory evidence.

Id. at 10. The court rejected the petitioner's attempt to withdraw his pleas based on the alleged "newly discovered evidence" in these reports. Id. at 11. It reasoned that such a claim required the same showing of materiality the court found lacking in the petitioner's Brady claim. Id. at 11-12.

The court also rejected the petitioner's ineffective assistance of counsel claims. Id. at 12. It noted the petitioner's assertions that trial counsel was ineffective for not presenting defenses based on the arguments that (1) "the victim had a motive to accuse him of repeatedly sexually assaulting her because he did not let her get her way, made her work around the house, and forced her to leave a party early;" (2) "the victim simply dreamed that [the petitioner] sexually assaulted her because [the petitioner] himself had bad

7

dreams as a child;" (3) the victim delayed reporting of the sexual assaults and was unable to remember specific dates on which the sexual assaults occurred;" and (4) "no one else who was present in the home when the sexual assaults occurred saw or heard anything." Id. at 13. The court found that the petitioner had not overcome a presumption that his trial counsel could have reasonably concluded that those defenses were not viable, reasoning that (1) it was "unlikely" for the jury to believe either the petitioner's "dream theory" or "that the victim would lodge such serious accusations against her own father for such petty reasons," id.; (2) children commonly "delay reporting sexual assaults due to fear, embarrassment, or guilt and to be confused about the time frame of assaults, particularly in a situation . . . where the assaults were alleged to have occurred over a period of several years," id.; (3) the victim claimed that the assaults "always happened while her mother was at work and that they usually happened in [the petitioner's] bedroom behind locked doors," id. at 13-14; and (4) as to any assaults that occurred outside of the petitioner's bedroom, "it was unlikely [the petitioner] would have sexually assaulted the victim when other people were around to see what he was doing," id. at 14.

The court rejected the petitioner's argument that trial counsel was ineffective for not raising a defense based on "the medical report showing that the victim had a normal genital exam." Id. It disagreed with that characterization of the report and found that trial counsel could have reasonably decided that such a defense was "not worth pursuing." Id. The court noted the petitioner's claim that trial counsel was ineffective for "not

8

finding or telling him about the medical report, the DNA report, or the police report." Id. The court found that "the record suggest[ed] that trial counsel had these documents prior to [the petitioner's] plea hearing," and concluded that "[e]ven if trial counsel did not share them with [the petitioner], he ha[d] not properly alleged prejudice given that nothing in the documents could have made [the petitioner] think he had a reasonable chance of prevailing at a trial on the numerous crimes with which he was charged." Id.

The Court of Appeals rejected the petitioner's claim that "trial counsel was ineffective for failing to seek out information that someone else committed the crimes," concluding that the petitioner "[did] not explain who else might have been responsible" and that the "conclusory and undeveloped assertion [did] not warrant discussion." Id. at 14-15 (citing State v. Pettit, 171 Wis. 2d 627, 646-47 (Ct. App. 1992)). It found that trial counsel was not ineffective for allegedly forcing the petitioner to accept a plea deal, reasoning that "[t]he record shows that [the petitioner] was considering a plea deal for more than a month prior to the plea hearing." Id. at 15. Regarding the petitioner's argument that the circuit court improperly allowed his mother into the courtroom, the Court of Appeals concluded that the petitioner did not "connect this to a claim of ineffective assistance of trial counsel." Id. The court also noted that the petitioner "expressly asked to be allowed to talk to his mother, who traveled from New Mexico to attend the proceedings." Id.

Rejecting the petitioner's claim that trial counsel was ineffective for erroneously suggesting to him that he would serve only five years, the court

9

concluded that (1) the petitioner's claim referred merely to trial counsel's recommendation to the circuit court at the sentencing hearing, and (2) the petitioner was aware that the court was not constrained by that recommendation. Id. at 15-16. The court rejected the petitioner's claim that "the sentencing transcript show[ed] that he was on a heavy amount of prescription medication," reasoning that "immediately prior to sentencing, [the petitioner] told the circuit court that he was not on any medication." Id. at 16. The Court of Appeals concluded that trial counsel was not ineffective for failing to discuss the purpose element of sexual contact with the petitioner, noting that "trial counsel and the circuit court properly advised [the petitioner] that the charges involved sexual intercourse" and that the petitioner "did not enter pleas to any offenses charging him with having sexual contact." Id.

According to the Court of Appeals, trial counsel was not ineffective for failing to interview the petitioner's wife "regarding where the family lived in 2002, what shift he worked from 1999 to 2004, and the period of time when he was in jail on separate charges;" the court concluded that the petitioner did not "sufficiently explain why he could not have relayed this information himself or why it mattered." Id. "Regarding [the petitioner's] claim that his wife would have proven that he could not perform any sexual activity while they lived at one of the addresses where the assaults occurred," the court found that the petitioner's wife gave contrary statements to the police. Id. at 16-17. The court found that the interests of justice did not warrant a new trial, noting both that it was unconvinced an alleged withholding of evidence had occurred, and that

the petitioner's argument was otherwise undeveloped. Id. at 18. The Wisconsin Supreme Court denied review on May 8, 2018. Dkt. No. 2-1 at 38.

### 3. *2018 postconviction motion*

In June of 2018, the petitioner filed another motion for postconviction relief in Milwaukee County Circuit Court. Dkt. No. 2-1 at 57; Dkt. No. 17-5 at 4. In that motion, the petitioner contended that (1) his trial counsel rendered ineffective assistance "by failing to contradict the State's sentencing argument that [the petitioner] had sexual intercourse with the victim" and for erroneously telling the petitioner that he would only serve five years in prison; (2) because the court sentenced him based on inaccurate information, the court should resentence him; and (3) the medical report constituted a "new factor," entitling him to a sentence modification. Dkt. No. 17-5 at 4.

Characterizing it as "a frivolous motion for sentence modification or resentencing" that relied on the same information the petitioner presented in his prior postconviction proceedings, the circuit court denied the motion. Id. at 4-5. The circuit court pointed to the Wisconsin Court of Appeals' prior ruling "that the medical report [the petitioner] provided did not disprove sexual intercourse, and it reiterated that the medical report did not support [the petitioner's] 'inaccurate information and new factor claims because it [did] not provide clear and convincing evidence that [the petitioner] never engaged in sexual intercourse with the victim.'" Id. at 5. The circuit court also concluded that the petitioner's claims were "procedurally barred because [the petitioner] did not provide a sufficient reason for failing to raise the claims in his prior

11

motion for postconviction relief." Id. (citing State v. Escalona-Naranjo, 185 Wis. 2d 168, 185 (1994)).

The Wisconsin Court of Appeals agreed with the circuit court, rejecting the petitioner's plea withdrawal and resentencing claims as procedurally barred "for several reasons." Id. The Court of Appeals found that (1) state law "bars prisoners like [the petitioner] who have filed prior postconviction motions from seeking collateral review of issues that could have been raised previously unless the prisoner provides a 'sufficient reason' for failing to raise those issues earlier," id. (citing Escalona-Naranjo, 185 Wis. 2d at 185); (2) the petitioner's postconviction motion "did not offer any reason why he did not previously challenge the trial court's reliance on inaccurate information or trial counsel's failure to make certain objections at the sentencing hearing," and thus, "those claims [were] procedurally barred," id. at 6; (3) if the petitioner's prior §974.06 motion and supplemental motion addressed the issues underlying the petitioner's 2018 postconviction motion—"such as his claim that the medical report prove[d] he did not have sexual intercourse with the victim and his claim that trial counsel erroneously told him he would serve only five years in prison—he [was] barred from relitigating those issues," id. (citing State v. Witkowski, 163 Wis. 2d 985, 990 (Ct. App. 1991)); and (4) because it had "already rejected [the petitioner's] claim that the medical report prove[d] he did not have sexual intercourse with the victim," the petitioner could not "relitigate the value of the medical report or rely on it to prove the existence of a new factor" for the purposes of a sentence modification, id. at 7.

B.     Federal *Habeas* Petition (Dkt. No. 1)

The petitioner filed his federal *habeas* petition on June 14, 2019, asserting six grounds for relief. Dkt. No. 1. The petition asserted (1) that the State failed to turn over exculpatory evidence prior to trial, id. at 4; (2) that the petitioner did not enter his guilty plea knowingly, voluntarily and intelligently, id. at 5; (3) ineffective assistance of postconviction counsel, id. at 8; (4) ineffective assistance of trial counsel, id. at 9; (5) a due process violation, id. at 11; and (6) newly discovered evidence allegedly showing "that there was insufficient evidence to support the conviction," id. at 12.

On January 28, 2020, the court screened the petition. Dkt. No. 10. While the court declined to dismiss the case at that stage, it expressed its concern regarding the petition's timeliness. Id. at 5-6. It explained that

> [t]he petitioner's 2008 convictions appear to have become "final" for purposes of federal habeas review when the petitioner's direct appeal concluded—in 2009. The petitioner's supporting brief indicates that he first received his case file in October 2011 and did not become aware of the medical report, DNA analysis report and police incident report until his filed an open records request. Dkt. No. 2 at 4. He does not indicate when he first received these requested documents. Id. If he received them more than a year before the June 14, 2019 petition date, his petition may be time-barred.

Id. at 6.

## II.     Respondent's Motion to Dismiss (Dkt. No. 16)

A.     Respondent's Brief in Support (Dkt. No. 17)

On April 21, 2020, the respondent filed a motion to dismiss the petition as untimely. Dkt. No. 16; Dkt. No. 17 at 4. The respondent asserts that the petitioner's conviction "became final in either 2009 or in 2010," reasoning that

13

(1) the circuit court entered the judgment of conviction in 2009, (2) the Wisconsin Court of Appeals gave the petitioner until February 11, 2010 to file a postconviction motion or notice of appeal, (3) the petitioner filed a postconviction motion for resentencing on February 10, 2010, (4) the circuit court denied that motion two days later and (5) the petitioner did not appeal that decision. Dkt. No. 17 at 7-8. The respondent contends that "even if the postconviction motion is considered part of his direct appeal, [the petitioner's] conviction became final in 2010, and his one-year federal statute of limitations ran out in 2011." Id. at 8. The respondent states that the petitioner did not file another postconviction motion until 2015, and did not file his federal *habeas* petition until 2019—"well beyond the 1-year statute of limitations under 28 U.S.C. §2244(d)(1)(A)." Id.

The respondent asserts that the petition also is untimely under 28 U.S.C. §2244(d)(1)(D). Id. She argues that the petitioner's claims "all essentially relate to the documents he submitted with his 2015 postconviction motion, which included" the medical report, the DNA report and the police report. Id. The respondent contends that the facts as stated in the petition reflect that the petitioner "became aware of the documents, or could have become aware of them through due diligence, much more than a year prior to filing his federal petition." Id. at 8-9. Noting that the petitioner's supporting brief "indicates that he became aware of the documents in 2011 or 2012," the respondent points out that the petitioner filed his *habeas* petition more than seven years later. Id. at 9.

B.    Petitioner's Brief in Opposition (Dkt. No. 22)

Conceding that he "received his case file from postconviction counsel on October 20, 2012," the petitioner asserts that he did not receive the medical report, the DNA report or the police report until October of 2015. Dkt. No. 22 at 3-4. The petitioner explains that while his case file contained a bill from Children's Hospital of Wisconsin for an "initial examination," he did not know how to obtain records of this examination. Id. at 3. He asserts that he "wrote to the Wisconsin State Public Defenders Office on November 11, 2012, to inquire if they were aware of a medical [report], DNA analysis, and a Police Incident Report;" he says they replied that they did not have the files. Id. He says that his mother and father-in-law contacted his trial and postconviction attorneys in 2012, and that the attorneys indicated that his case was closed; trial counsel said he had turned all the evidence over to postconviction counsel. Id. The petitioner complains that Attorney Voss did not explain to him or his mother "that an open records request would have to be filed to receive the documents until [the petitioner] wrote to him on October 26, 2015." Id.

The petitioner states that he next sought an appointment of counsel through the Wisconsin State Public Defender's Office and assistance from the Wisconsin Innocence Project. Id. at 3-4. When these efforts were unsuccessful, "[he] started researching his case more thoroughly" and "putting together his Wis. Stat. §974.06 motion." Id. at 4. The petitioner stresses that when he filed his §974.06 motion in July of 2015, "he was still unaware of how to obtain the evidence." Id. According to the petitioner, he contacted Attorney Voss, who then

15

told him that "if [he] wanted to obtain the documents he would have to file an open records request to the West Allis Police Department." Id. The petitioner states that he did so and received the evidence in December 2015. Id. He explains that by that point, the circuit court already had denied his §974.06 motion. Id. He explains, however, that the Wisconsin Court of Appeals remanded his case back to the circuit court "to allow [him] to file an additional [§974.06] motion relating to his newly discovered evidence." Id. After the Wisconsin Supreme Court denied review of the denial of that motion, the petitioner says that he "again filed another [§974.06] motion on February 2, 2018, to further exhaust two additional claims." Id.

The petitioner also argues equitable tolling. Id. at 16. Citing Holland v. Florida, 560 U.S. 631 (2010), he says that he has been pursuing his rights diligently—he asserts that he did "every thing in his power" to get a lawyer, wrote his trial and postconviction lawyers to obtain "the critical information that he did not commit the crime," contacted the prosecutor's office and the circuit court seeking medical information. Id. He also tried to get help from the Innocence Project. Id. at 17. He contends that the errors his counsel made do not constitute garden variety excusable neglect, accusing his trial lawyer of working with the state to secure his conviction. Id. He asserts that if his lawyer had gotten the medical report, it would have shown that the petitioner had no sexual encounters with R.L.C. Id. at 18.

Finally, the petitioner asserts that he is actually innocent, providing him a "gateway" to relief despite procedural errors. Id. at 20.

16

C.     Respondent's Reply Brief (Dkt. No. 23)

The respondent stresses that "[the petitioner] acknowledges he was aware of the medical report back in 2012" and argues that this means that the petitioner's limitation period began running in 2012. Dkt. No. 23 at 1. Further, she asserts that "even if the habeas clock did not start until [the petitioner] had the documents in his hand in 2015," the petition still was untimely. Id. at 1-2. The respondent asserts that review of the petitioner's 2015 §974.06 motion "was completely concluded on May 8, 2018," and that the petitioner did not file his federal _habeas_ petition until June 14, 2019. Id. at 2. The respondent argues that "tolling ended on May 8, 2018," and that "[the petitioner] does not get an additional 90 days of tolling for the time in which he could have sought review in the U.S. Supreme Court because appeal number 2015AP2267 was collateral review, not a direct appeal." Id. (citing Lawrence v. Florida, 549 U.S. 327, 333-34 (2007)).

D.     Analysis

1.     _Statute of Limitations under AEDPA_

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets a one-year limitations period for petitioners seeking federal _habeas_ relief. 28 U.S.C. §2244(d)(1). The one-year period begins to run from the latest of four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United

17

States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1)(A)-(D). The petitioner does not argue that the state imposed some filing impediment that it later removed. He does not argue that he is asserting a right newly recognized by the Supreme Court. He *does* argue that his some of his *habeas* claims are based on newly discovered evidence—the DNA report, the medical report and the police report. Dkt. No. 22 at 5-16.

When considering whether a *habeas* petition is timely under §2244(d)(1)(D), a federal court separately considers the timeliness of each claim in the petition. Davis v. United States, 817 F.3d 319, 327-28 (7th Cir. 2016) ("[A]s every other circuit to have considered the question has concluded, and we now hold, the timeliness of each claim asserted in either a section 2255 motion or a petition challenging a state-court conviction under 28 U.S.C. §2254 must be considered independently."). In making this determination, the Seventh Circuit reasoned

[t]he simple fact that [the petitioner] might have one timely claim to make under section 2255 based on a Supreme Court precedent issued years after his conviction otherwise became final does not allow him to tack on additional, otherwise untimely claims to that one timely claim. [The petitioner] asserts that all his claims are intertwined, but that is true only in the sense that they all generally relate to his sentence, and that is not enough to deem them all timely.

18

Id. This reasoning applies to the court's timeliness analysis here; the petitioner's "new evidence" supporting one claim does not allow him to "bootstrap" otherwise untimely claims into consideration. The court will consider each of the petitioner's claims independently.

a. Involuntary Plea Claim

The petitioner argues that "the discovery of the evidence provides that [he] did not have sexual intercourse with [the victim]." Dkt. No. 22 at 9. He asserts that the medical report constitutes "newly discovered evidence provid[ing] that [he] should have never been charged with sexual assault involving sexual intercourse." Id. He contends that "the circuit court failed to provide the crucial information in Wis. Stat. §948.01(6)," and "[t]herefore, [the petitioner] lacked the requisite understanding to make a knowing, intelligent, and voluntary plea." Id. The petitioner concludes that "[a]s such, there was a total failure to inform him of the law in relation to the facts of his case as it relates to sexual assault of a child." Id. The petitioner alleges that "[h]ad counsel informed [the petitioner] that he was pleading to a violent crime that subjected him to a lifetime of imprisonment, . . . he would never plead guilty and insisted on going to trial." Id. He adds that his "claim that he did not enter a knowingly, voluntary, and intelligently guilty plea could not have been properly presented without the discovery of the medical evidence." Id.

Even if the information contained in the medical report constituted the factual predicate for the petitioner's claim that he did not enter his plea knowingly, voluntarily and intelligently, the claim is untimely. In the

19

petitioner's opening brief, he states that "[o]n October 15, 2011, [he] received his case file from postconviction counsel, as [he] was reviewing the file he noticed a medical bill from Children's Hospital of Wisconsin with the words 'initial examination' on it." Dkt. No. 2 at 4. He states that he "wrote to postconviction counsel on October 11, 2012, to inquire if she was aware" of the medical report, the DNA report and the police report. Id. In his brief opposing the respondent's motion to dismiss the petition, the petitioner states that he noticed the medical bill indicating the "initial examination" upon receiving his case file from postconviction counsel on October 20, 2012. Dkt. No. 22 at 3.

The respondent asserts that the petitioner became aware of the medical report "in 2011 or 2012." Dkt. No. 17 at 9. At that point the petitioner was aware that an initial examination had taken place. The petitioner explains that he did not receive the report until December 15, 2015 after filing an open records request. Dkt. No. 22 at 4. The petitioner asserts that he could not have filed that open records request earlier—for example, when he discovered the medical bill for an "initial examination" in 2011 or 2012—because his counsel did not tell him that was what he had to do. But even assuming that was true, the petitioner had the medical report in his possession by December 15, 2015. As of that date, the factual predicate for any claims the petitioner wanted to raise based on the medical report was available to him. The petitioner did not file his federal *habeas* petition until June 14, 2019—three and a half years later.

The court must consider the doctrine of statutory tolling under §2244(d)(2). §2244(d)(2) states that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent . . . claim is pending shall not be counted toward any period of limitation under this subsection." In October of 2016, the petitioner filed a supplemental postconviction motion based on the medical report. See State v. Cabagua, Milwaukee County Case No. 08CF005374 (available at https://wcca.wicourts.gov). On January 17, 2018, the Wisconsin Court of Appeals affirmed the circuit court's denial of the petitioner's 2016 supplemental postconviction motion (which he filed after the Court of Appeals remanded to allow him to do so). The Wisconsin Supreme Court denied review on May 8, 2018. Dkt. No. 2-1 at 38. Because "a certiorari petition from post-conviction review does *not* toll the time limit or otherwise act as a grace period," Taylor v. Michael, 724 F.3d 806, 808 (7th Cir. 2013) (citing Lawrence v. Florida, 549 U.S. 327, 331-32 (2007) (emphasis in Taylor)), the statute of limitations would have expired a year later—on May 8, 2019, three months *before* the petitioner filed his federal *habeas* petition.

The petitioner's claim that his Alford pleas were involuntary is untimely.

### b.    Due Process—Sentencing Claim

The petitioner argues that the medical report proves that he did not have sexual intercourse with the victim, and that the circuit court erred when it sentenced him under the belief that he did have sexual intercourse with the victim. Dkt. No. 22 at 9-12. Emphasizing that "the medical report was give [sic]

21

explicit attention and consideration by the circuit court at [his] sentencing," and "was clearly relied on," the petitioner concludes that "[t]his inaccurate information claim could not have been properly stated without the discovery of the new evidence, therefore it is a 'factual predicate' for purposes of triggering the statute of limitations under §2244(d)(1)(D)." Id. at 12.

The petitioner's contention that the circuit court expressly relied on the medical report at his 2009 sentencing hearing belies his argument that he could not have reasonably discovered the report before he received his open records request documents in 2015. Regardless, this claim is based on the same discovery of the medical report as the petitioner's involuntary plea claim. The court has concluded that even applying statutory tolling, the limitation period for a claim based on the discovery of the medical report on December 15, 2015 would have expired, at the latest, on May 8, 2019. This claim is untimely.

c.     Insufficiency of the Evidence Claim

The petitioner argues that because the medical report proves he never had sexual intercourse with the victim, there is insufficient evidence to sustain his conviction. Dkt. No. 22 at 13. Again, this claim relies on the "discovery" of the medical report in 2015. This claim is untimely.

d.     Brady Claim

The petitioner's Brady claim relies on the discovery of the medical report, the DNA report and the police report. Dkt. No. 22 at 13-16. He argues that the state unconstitutionally withheld the reports. Id. at 13. Because the petitioner

22

"discovered" the DNA and police reports at the same time he discovered the medical report, the timeliness analysis is the same. This claim is untimely.

The petitioner raises a Confrontation Clause claim under the Sixth Amendment. Id. at 5-8. By raising this claim for the first time in his brief opposing the motion to dismiss, however, the petitioner waived this claim. Russell v. Sandahl, 989 F.2d 502 (7th Cir. 1993). Even if the petitioner had not waived the claim, it is untimely; the claim relies on the discovery of the medical report in 2015. Dkt. No. 22 at 5-8.

The petitioner's claims based on the discovery of the medical, DNA and police reports are untimely, even under §2244(d)(1)(D). His only recourse is for the court to excuse his untimely filing. There are two bases for a court to excuse the untimely filing of a *habeas* petition: by applying the doctrine of equitable tolling or by finding that the petitioner has demonstrated actual innocence.

  2.   *Equitable Tolling*

The petitioner correctly describes the elements of equitable tolling under Holland v. Florida, 560 U.S. 631 (2010): "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland, 560 U.S. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Dkt. No. 22 at 16. Courts rarely grant the "extraordinary" remedy of equitable tolling. Obriecht v. Foster, 727 F.3d 744, 748 (7th Cir. 2013) (quoting Simms v. Acevedo, 595 F.3d 774, 781 (7th Cir. 2010)). A petitioner bears the burden of showing that he has been

23

"discovered" the DNA and police reports at the same time he discovered the medical report, the timeliness analysis is the same. This claim is untimely.

The petitioner raises a Confrontation Clause claim under the Sixth Amendment. Id. at 5-8. By raising this claim for the first time in his brief opposing the motion to dismiss, however, the petitioner waived this claim. Russell v. Sandahl, 989 F.2d 502 (7th Cir. 1993). Even if the petitioner had not waived the claim, it is untimely; the claim relies on the discovery of the medical report in 2015. Dkt. No. 22 at 5-8.

The petitioner's claims based on the discovery of the medical, DNA and police reports are untimely, even under §2244(d)(1)(D). His only recourse is for the court to excuse his untimely filing. There are two bases for a court to excuse the untimely filing of a *habeas* petition: by applying the doctrine of equitable tolling or by finding that the petitioner has demonstrated actual innocence.

  2.   *Equitable Tolling*

The petitioner correctly describes the elements of equitable tolling under Holland v. Florida, 560 U.S. 631 (2010): "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland, 560 U.S. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Dkt. No. 22 at 16. Courts rarely grant the "extraordinary" remedy of equitable tolling. Obriecht v. Foster, 727 F.3d 744, 748 (7th Cir. 2013) (quoting Simms v. Acevedo, 595 F.3d 774, 781 (7th Cir. 2010)). A petitioner bears the burden of showing that he has been

23

diligently pursuing his rights, and that the required extraordinary circumstances exist. Id. "'Extraordinary circumstances' are present only when an 'external obstacle' beyond the party's control 'stood in [its] way' and caused the delay." Lombardo v. United States, 860 F.3d 547, 552 (7th Cir. 2017) (quoting Menominee Indian Tribe of Wis. v. United States, __ U.S. __, 136 S. Ct. 750, 756 (2016)).

The petitioner has been filing documents and pleadings in state court since his 2009 judgment of conviction. Arguably, he "has been diligently pursuing his rights." But the petitioner cannot prove the second element of equitable tolling; he has not demonstrated that an external factor beyond his control stood in his way and prevented him from timely filing a federal *habeas* petition.

The petitioner stresses his efforts to obtain counsel and relevant records after receiving his case file in 2012. He states that he (1) "did every thing in his power to secure an attorney;" (2) "wrote trial counsel and postconviction counsel to try to seek out the critical information that he did not commit the crime," id.; (3) "contacted the district attorneys office, and the circuit court seeking the medical information," id.; and (4) "tried to secure help from the Wisconsin Innocence Project." Dkt. No. 22 at 16-17. The petitioner blames his inability to obtain the medical, DNA and police reports sooner on the performance of his trial and postconviction counsel. Id. at 17. He asserts that "counsel had a duty to investigate pretrial discovery . . . , especially when there was medical evidence providing that his client did not commit the crime." Id.

The petitioner alleges a variety of errors related to the proceedings in the circuit court. The petitioner reviews the medical, DNA and police reports as "clearly material evidence that would lead a reasonable juror to believe that [the petitioner] is innocent of the alleged crime;" he contends that "is clear that [the petitioner] insisted on going to trial" and that "counsel Voss's only intentions were to have [the petitioner] enter into plea negotiations with the state." Id. Reasoning that "[h]ad counsel done his duty and secured the medical reports there is no way [the petitioner] would have plead guilty to a crime that was impossible for him to commit," the petitioner concludes that "it seems counsel was working with the state to secure a conviction." Id. He argues that trial counsel's failures "to prepare any type of defense" and to "assure [the petitioner] that he believed that he did not commit the crime" left the petitioner "feeling helpless with no other choice but to plead guilty." Id. at 17-18. The petitioner faults his counsel for "decid[ing] not to secure the medical exam, which led the trial court to sentence [the petitioner] to an alleged violent crime, and subjected him to a lifetime of imprisonment." Id. at 18. He adds that his attorney "made a tactical decision to forgo further investigation into the medical report without consulting [the petitioner]." Id.

These allegations do not explain why the petitioner did not assert his constitutional claims through a federal *habeas* petition in a timely manner. The petitioner's claim that the circuit court clearly relied on the medical report at sentencing suggests that the petitioner knew—or had reason to know—about the medical report in 2009. Even if the petitioner could not have known about

25

the medical, DNA and police reports until December 2015, the litigation of the petitioner's latest postconviction motion concluded in May 2018, and the petitioner has not identified an external factor beyond his control that prevented him from filing a federal *habeas* petition within the one-year limitation period that would have expired in May of 2019.

The petitioner has not shown that "extraordinary circumstances" kept him from filing *habeas* claims within the statutory limitation period. The court will not equitably toll the limitation period to find the petition timely.

### 3. *Actual Innocence*

The petitioner asserts that the medical report, his own statements to Attorney Voss that the victim's grandfather committed the crimes, and inconsistencies in the evidence prove his innocence of the offenses to which he pled and require the court to deny the respondent's motion to dismiss the petition despite the fact that it is untimely. Dkt. No. 22 at 20-24. "Actual innocence is an equitable exception that renders the time limit set forth in section 2244(d)(1) inapplicable." Arnold v. Dittman, 901 F.3d 830, 836 (7th Cir. 2018) (citing McQuiggin v. Perkins, 569 U.S. 383, 386 (2013)). It "is merely a gateway through which a court can consider a petitioner's otherwise barred claims on their merits." Lund, 913 F.3d at 668 (citing Herrera, 506 U.S. at 404-05). "[T]enable actual-innocence gateway pleas are rare." McQuiggin, 569 U.S. at 386.

> A claim of actual innocence must be both credible and founded on new evidence. *Schlup* [*v. Delo*], 513 U.S. [298] at 324 . . . [(1995)]. To be credible, the claim must have the support of "reliable evidence— whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence." *Ibid.* That evidence must also be new in the sense that it was not before the trier of fact. *Ibid.*; *Gladney* [*v. Pollard*], 799 F.3d [889] at 896, 898 [(7th Cir. 2015)]. The petitioner's burden is to show that, in light of this new evidence it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.

Id. at 836-37. The gateway is narrow; a petitioner must present "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Gladney, 799 F.3d at 896 (quoting Schlup, 513 U.S. at 316.)

The petitioner alleges that he told his lawyer that "Brett," the victim's grandfather and, presumably, the petitioner's father-in-law, abused the victim. Dkt. No. 22 at 22-24. He describes encountering Brett and the victim engaging in sexual acts, later confronting Brett with a "gun drawn pointing it at Brett" and eventually, firing the gun "right by Brett's head." Id. at 22. The petitioner claims that he "put the gun to [Brett's] head and was just about to shoot him" before hearing someone calling his name and coming to ask "what that noise was." Id. at 22-23. The petitioner says that after the person who called his name left the room, the petitioner again pointed the gun at Brett, at which point Brett pled with the petitioner, stating that he was sorry and that he was high. Id. at 23. The petitioner says that he "reasoned with Brett not to tell anyone about the incident, because he did not want to lose the life he had that he was living." Id. (It is not clear whether the petitioner means that Brett did not want to lose the life he was living, or that the petitioner did not want to lose the life the petitioner was living.) The petitioner asserts that when he told his

27

attorney about the incident, his attorney told him "that story won't fly." Id. The petitioner reasons that his statement about Brett, coupled with "the sworn statement from [a] nurse practitioner also provid[ing] that no sexual intercourse occurred," id. at 24, "provide[] reasonable doubt exists," and that "no reasonable juror would have found [the petitioner] guilty of the underlying charges, id. at 23."

The petitioner's alleged unsworn statements to his attorney and his personal accounts do not constitute reliable evidence strong enough to undermine the court's confidence in the outcome of the proceedings in state court, including the petitioner's decision to enter Alford pleas. While the petitioner claims that he did not commit the crimes to which he pled, that claim alone lacks the indicia of reliability to support a claim of actual innocence sufficient to excuse the untimely filing of the federal petition. The petitioner's "new evidence" does not prove that Brett committed the crimes underlying the petitioner's convictions. As the state appellate court explained, it does not prove that the victim had not engaged in sexual intercourse. The evidence does not meet the demanding standard of showing that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt.

The court will deny the petition as untimely.

## III. Petitioner's Motion to Supplement the Record (Dkt. No. 13)

About five weeks after the court screened the petition, the petitioner filed a motion to supplement the record. Dkt. No. 13. He asked the court to allow him to supplement with "additional evidence that supports his plea was

28

involuntary." Id. at 1. The petitioner attached to the motion twenty-nine pages of records from a pharmacy that appear to reflect records of the petitioner's medical prescriptions from 2007 to 2009. Dkt. No. 13-1. The petitioner claimed that "the effect of OxyContin withdrawal" affected the voluntariness of his plea. Dkt. No. 13 at 1-2.

This evidence goes to the merits of the petitioner's claims. The court has concluded that the petition is untimely, which means that the court cannot address the merits of the claims. The court will deny the motion as moot.

## IV. Petitioner's Second Motion for Appointment of Counsel (Dkt. No. 24)

The petitioner also renewed his motion asking the court to appoint him counsel. Dkt. No. 24. He emphasized the merits of his claims and his belief that he was unable to effectively present them. Id. at 2-3. As he did in his first motion for appointment of counsel, the petitioner maintained in the second motion that while the medical report proves his innocence, "the complexities of [his] case factually and drastically exceed [his] capacity as a layperson to coherently present all of his claims. Id. at 3.

Because the court is granting the respondent's motion to dismiss the petition, the petitioner's second motion for appointment of counsel is moot. Dkt. No. 24. Even if the court were not dismissing the petition, it would not grant the motion. A prisoner does not have a constitutional right to counsel for a collateral attack on his conviction. Cannon v. United States, 326 F. App'x 393, 395 (7th Cir. 2009). In its January 28, 2020 screening order, the court denied the petitioner's first motion for appointment of counsel and detailed the

relevant facts and legal standards underlying that decision. Dkt. No. 10 at 8-11. While the court stated the petitioner could renew his motion at a later date, nothing that has occurred in the interim convinces the court that appointment of counsel is necessary. The petitioner presented his *habeas* claims clearly and thoroughly. While appointed counsel might have made the petitioner's job easier, the court was nonetheless able to understand the petitioner's claims and arguments as he presented them.

**V.      Certificate of Appealability**

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because no reasonable jurist could debate that the petition is untimely under 28 U.S.C. §2244.

**VI.     Conclusion**

The court **DENIES AS MOOT** the petitioner's motion to supplement the record. Dkt. No. 13.

The court **DENIES AS MOOT** the petitioner's second motion for appointment of counsel. Dkt. No. 24.

The court **GRANTS** the respondent's motion to dismiss the petition. Dkt. No. 16.

The court **DISMISSES** the petition as untimely under 28 U.S.C. §2244.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

The court **DECLINES TO ISSUE** a certificate of appealability.

Dated in Milwaukee, Wisconsin this 23rd day of March, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

31